875 F.2d 656
 Marvin P. SHORE, Bernice G. Shore, Donald Bonomo, Antonio
Venezia, Dean Homer, Jesse Iverson and William
Einhorn, as Trustee under C.D.E.P.S.P.
Trust,
Plaintiffs-Appellees-
Cross-Appellants,
v.
Louis F. DANDURAND, William J. Huber, Edward Pavlik, and
Richard Small, Defendants-Appellants-Cross-Appellees.
 Nos. 87-3058, 87-3143.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 7, 1988.
Decided May 31, 1989.
Rehearing and Rehearing In Banc Denied July 17, 1989.
 
 Sherwin J. Malkin, Chicago, Ill., for defendants-appellants-cross-appellees.
 Lawrence C. Rubin, Arvey Hodes Costello & Burman, Chicago, Ill., for plaintiffs-appellees-cross-appellants.
 Before WOOD, Jr., and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 Defendants, Louis F. Dandurand, William J. Huber, Edward Pavlik and Richard Small appeal from a judgment, following a bench trial, awarding the plaintiffs, Marvin P. Shore, Bernice G. Shore, Donald Bonomo, Antonio Venezia, Jesse Iverson and William Einhorn $87,230 on a pendent state law breach of fiduciary duty claim.[1] The plaintiffs brought this claim in a complaint alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b) and Rule 10b-5 (17 C.F.R. Sec. 240.10b-5), Sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. Secs. 77l (2) and 77q(a), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1961 et seq., Sections 5, 12 and 13 of the Illinois Securities Law, Ill.Rev.Stat., ch. 121 1/2 Secs. 137.5, 137.12 and 137.13, as well as common law fraud. The defendants also appeal the district court's denial of Rule 11 sanctions against the plaintiff, Dean Homer. The plaintiffs cross-appeal, alleging that the district court erred in limiting their damages recovery to $87,230 and in failing to award them pre-judgment interest. We reverse and remand for a new trial. In light of our resolution of the case, we do not address the propriety of the district court's award of damages or its denial of sanctions.I
 
 
 2
 This case arises from poorly timed investments in farmland in the state of Missouri. During the 1970's, Kenneth Freitag organized business ventures that provided opportunities for individuals to invest in midwestern farmland, through the purchase of land, retention of the land for a period of time and hopeful resale at an appreciated value. The parties to this appeal are all people engaged in business and the professions who invested in a Freitag organized enterprise, known as the "Radcliffe Venture."
 
 
 3
 The Radcliffe Venture was comprised of some 14 participants and was formed during the months of September or October in the fall of 1979. The business enterprise involved the purchase of a total of 518 acres of farmland in the Sikeston, Missouri, area for a total price of $963,480. Five of the participants in the land acquisition venture were the plaintiffs in this action (Shore, Venezia, Bonomo, Iverson and Einhorn).[2] The four defendants appealing this judgment (Dandurand, Huber, Pavlik and Small) also participated in the land investment scheme.[3]
 
 
 4
 Freitag solicited the plaintiffs' participation in the Radcliffe Venture through promotional "seminars" held at a suburban Chicago, Illinois, country club. The district court determined that Freitag's promotional scheme was not fraudulent. Nonetheless, prior to the commencement of the plaintiffs' participation in the Radcliffe Venture, neither Freitag nor the other defendants made the plaintiffs aware of one critical detail, namely that the defendants (Dandurand, Huber, Pavlik, Small and Freitag) had previously owned the land that comprised the Radcliffe Venture.
 
 
 5
 The afore-mentioned defendants were each 20% owners of the New Madrid Venture, a business enterprise that sold 372 acres of land to the Radcliffe Venture. These five defendants, operating under the name of the Powers Venture, had also previously owned the remaining 146 acres that Radcliffe purchased. The defendants conveyed that land to a local farmer, Gaylon Lawrence, as part of a land transaction referred to as a tax-free exchange.[4] Lawrence ultimately sold to the Radcliffe Venture all of the land he received from the defendants.
 
 
 6
 The formation of the Radcliffe Venture was part of Freitag's efforts to react to the termination in the appreciation of farmland values that took place in 1979. The abrupt end of the trend of higher land values left the defendants without a market in which they could resell their land. As a result of the sale to the Radcliffe Venture, each defendant, as a participant in the New Madrid Venture, obtained a $4,400 distribution from the cash the New Madrid Venture received from the Radcliffe Venture. From 1979 to 1982 each defendant also received a total of approximately $13,000 from the Radcliffe Venture, an amount reflecting the difference between the 12 percent interest that the land contract called for Radcliffe to pay New Madrid and the 9 3/4 percent interest that New Madrid was required to pay on its mortgage. Not surprisingly, the Radcliffe Venture was unable to sell the farmland it purchased.
 
 
 7
 Although the defendants' previous ownership of the land the Radcliffe Venture purchased was recorded in Missouri real estate records, the district court found that the difficulty the plaintiffs would have in obtaining this information meant that "they couldn't have found out by going down to Missouri."[5]
 
 
 8
 Plaintiff Marvin Shore ultimately ascertained the previous ownership of the property on October 30 and 31, 1982, through an inspection of the records located in the office of Freitag Realty. Upon becoming aware of this fact, Shore sent a letter to Freitag, Dandurand, Huber, Pavlik and Small, dated November 15, 1982, seeking rescission of his purchase of an interest in the Radcliffe Venture on the ground that the defendants had engaged in "unlawful conduct for which there is an adequate remedy at law." At a Radcliffe Venture meeting held later in November 1982, Shore read this letter aloud and, thus, revealed the property's previous ownership to the other plaintiffs. Although the other plaintiffs obviously became aware of the defendants' prior ownership of the property at this time, each plaintiff had other means available, such as reading the correspondence they had received, as well as inspecting files and the Missouri public real estate records.[6]
 
 
 9
 The district court in its decision determined that the defendants and the plaintiffs were joint venturers, who owed a fiduciary duty to one another. The trial court concluded that the defendants' failure to disclose to the plaintiffs that they had previously possessed interests in land the Radcliffe Venture purchased breached this fiduciary duty. The court stated that "defendants who breach a fiduciary relationship and benefit therefrom are to be compelled to disgorge what they got." Although all those involved had lost money, "to the extent that the monies that the plaintiffs paid into this venture found its way into the possession of these four defendants ... they are required to pay back to the plaintiffs that money, not more than that, not less than that." The parties' attorneys had agreed prior to the court's rendering of its decision that each defendant had received a total of approximately $17,400 in cash payments that the Radcliffe Venture made to the New Madrid Venture. The court, in its Findings of Fact and Conclusions of Law issued from the bench, stated that a judgment would be entered in an amount four times the $17,400 each defendant had received. Later the court, for some unknown reason, changed its mind and entered judgment in the amount of $87,230 (slightly more than five times $17,400), without explaining the discrepancy between the figure awarded and the figure the court had previously recited as being appropriate.
 
 
 10
 Several post-trial motions were filed, including motions relating to the amount of the judgment. The court denied the defendants' motions to amend the judgment, but accepted the plaintiffs' motion to amend the earlier findings to conform to the judgment the court ultimately entered. Thus, in effect, the court confirmed its prior entry of judgment and refused to reconsider its decision to enter judgment in the amount of $87,230. The court further denied the defendants' motion for imposition of Rule 11 sanctions against Dean Homer.
 
 II
 
 11
 Initially we determine whether the district court's finding that the defendants breached their fiduciary duty to the plaintiffs was proper. Because the parties have not urged us to apply the substantive law of another state, and because any joint venture that might have been formed in this case appears to have been entered into in Illinois, in accordance with our usual practice in such cases, we apply the substantive law of the forum state, Illinois. See United States v. Bob Stofer Oldsmobile-Cadillac, Inc., 853 F.2d 1392, 1397 (7th Cir.1988) (applying forum state substantive law to state law pendent jurisdiction claim); Checkers, Simon and Rosner v. Lurie Corp., 864 F.2d 1338, 1345 (7th Cir.1988) (" '[w]hen (as here) the parties do not say that the forum state's conflict-of-laws rules require the application of another state's substantive law, this means we must apply the forum state's substantive law.' ") (quoting In the Matter of Iowa Railroad, 840 F.2d 535, 543 (7th Cir.1988)).
 
 
 12
 The central question on this appeal is whether the district court properly determined that the defendants breached their fiduciary duty to the plaintiffs under Illinois law. The district court concluded that because the plaintiffs and the defendants were joint venturers, each of them owed a fiduciary duty to one another. The district court further determined that:
 
 
 13
 "There is no question in my mind and I find and so conclude that the defendants breached the fiduciary duty they owed the plaintiffs to have told them, simply to have told them or to see that they were told: You know, we are both the sellers in this case and the buyers. We own this land.... But they didn't tell the plaintiffs and they didn't see to it that the plaintiffs were told."
 
 
 14
 In reaching this holding, the district court explicitly determined that the plaintiffs were incapable of ascertaining this information through an examination of Missouri real estate records.[7]
 
 
 15
 For purposes of our analysis, we agree arguendo that the plaintiffs and the defendants were joint venturers and that the defendants owed a fiduciary duty one to another to disclose their former ownership of the property to the plaintiffs. But, upon consideration of the record in this case, we disagree with the district court's factual finding that the plaintiffs would have been unable to ascertain the defendants' former ownership of the involved land through a routine search of Missouri public real estate records.
 
 
 16
 As detailed previously, the trial court concluded that these plaintiffs were "intelligent, well-read [and] well-educated" business and professional people, including a general counsel of a corporation, a president of a drugstore chain, a publishing industry executive and two dentists. Nonetheless, the trial court found that these individuals would not have been able to examine Missouri real estate records to determine the previous ownership of the property acquired by the Radcliffe Venture. See n. 5, supra. Furthermore, the trial court appears to have also found that the plaintiffs would have been unable to hire someone familiar with Missouri real estate records to perform this task. The plaintiffs were investing in real estate that ultimately cost each plaintiff over $34,000, and had they used reasonable prudence, they could have ascertained the former ownership of the involved property by paying a trained professional to undertake a title search. Our examination of the entire evidence leaves us "with the definite and firm conviction that a mistake has been committed,"[8] with respect to the trial court's finding that the plaintiffs could not have ascertained the former ownership of the property by means of a Missouri title search. Accordingly, the district court's factual finding on this point must be reversed.[9]
 
 
 17
 In resolving the fiduciary duty issue, the district court relied, in part, upon its faulty determination of the factual question of whether the plaintiffs could have ascertained the defendants' former ownership of the property the Radcliffe Venture purchased through a search of Missouri real estate records. The trial court's reliance upon an improper factual premise in reaching its ultimate determination of the fiduciary duty issue is reminiscent of the situation that confronted this court in Andre v. Bendix Corp. (Andre I), 774 F.2d 786, 798-801 (7th Cir.1985). There we determined that certain of the district court's subsidiary factual determinations in a sex discrimination case were proper and others were improper. In rejecting the district court's ultimate factual determination of sex discrimination, we stated:
 
 
 18
 "Apparently the district court had some sort of 'hunch' that the hostility shown to Andre was based on her sex. Yet the district court did not articulate any basis for this 'hunch' and we are unable to affirm this ultimate finding on the basis of the evidence upon which the district court did rely."
 
 
 19
 Andre I, 774 F.2d at 799. We went on to state:
 
 
 20
 "Because we are unable to follow the district court's chain of reasoning from hostility to sex discrimination and are unable either to affirm the [ultimate] finding of sex discrimination or to determine that the [subsidiary] finding of hostility is clearly erroneous, we will remand this case for a new trial."
 
 
 21
 Id. at 801 (emphasis added). Similarly, we cannot rule out the possibility that there was a violation of fiduciary duty under Illinois law. However, the district court improperly relied upon the plaintiffs' alleged inability to ascertain the defendants' former ownership of the involved property through an examination of real estate records in reaching its conclusion on this issue. When this faulty premise is withdrawn from the district court's decision, the district court's "chain of reasoning" is unable to bridge the chasm between the facts presented in this record and the ultimate finding of a breach of fiduciary duty. In these circumstances we are "unable to follow the district court's chain of reasoning " in support of its finding on the breach of fiduciary duty question and refuse to affirm its resolution of this issue. "Where the district court's findings are inadequate for meaningful appellate review because we are unable to follow its reasoning," Andre I, 774 F.2d at 801, we must remand for a new trial.[10]
 
 
 22
 Because the district court committed clear error in its factual determination concerning the plaintiffs' ability to ascertain the defendants' former ownership of property the Radcliffe Venture purchased through an examination of Missouri real estate records and since the district court relied upon this determination in reaching its ultimate resolution of the question of breach of fiduciary duty, we remand for a new trial. The decision of the district court is
 
 
 23
 REVERSED AND REMANDED FOR NEW TRIAL.
 
 
 
 *
 The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 A default judgment had previously been entered in favor of the plaintiffs, including the plaintiff Dean Homer, against the defendants, Kenneth Freitag and Freitag Realty, Inc. No appeal has been taken from that judgment
 
 
 [2]
 Marvin Shore and Bernice Shore were joint tenants of a single interest in the Radcliffe Venture
 
 
 [3]
 Two other participants, Freitag and Homer, were defendant and plaintiff, respectively, in the district court, but were not included in the monetary judgment that is the subject of this appeal. The remaining three participants in the Radcliffe Venture have not been involved in this litigation
 
 
 [4]
 Such transactions were popular because of the favorable tax consequences they enjoyed at that time. They involved exchanges of real estate between the involved parties
 
 
 [5]
 The district court's full factual finding on this question read:
 "And the Court finds from the evidence there was no way by which [the plaintiffs] could have found out [that the defendants were the owners of the New Madrid property].
 Now, it is true that down on the farm in Missouri in Sikeston the Recorder's Office contains some documents which would have shown this if anybody who knew how to find out had gone down there and looked.
 Now, despite the fact that I have said these plaintiffs were intelligent, well-read, well-educated people, knew how to protect their interest, the Court find [sic] from the evidence that they couldn't have found out by going down to Missouri, because they would have had to go to the county office.
 I don't know where the county office is in Sikeston, Missouri. It might be in Sikeston.
 But they would have to do more than that. They would have to go to the county records and look, and the average layman doesn't know how to find these things out. Even though that layman be intelligent, educated and informed, they couldn't have found that out."
 
 
 [6]
 For example, it should be noted that each of the plaintiffs received documents in 1980 that, if read, would have informed them that the New Madrid Venture formerly owned part of the land Radcliffe purchased and that one of the defendants, William Huber, had signed the land contract between the Radcliffe Venture and the New Madrid Venture as the representative of the New Madrid Venture
 
 
 [7]
 The district court's complete finding on this issue is set forth at n. 5, supra
 
 
 [8]
 United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)
 
 
 [9]
 See United States Gypsum, 333 U.S. at 395, 68 S.Ct. at 542 ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed")
 
 
 [10]
 Because we have reversed and remanded for a new trial, we need not review the district court's determinations regarding damages or sanctions. Nonetheless, we note some serious reservations with respect to the trial court's resolution of certain damages questions. For example, we are troubled by the inconsistency between the amount of damages the court ultimately awarded and the lesser amount it had found appropriate in its findings of fact and conclusions of law